UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------- X

PATRICK POE, RACHEL ROE, and VERONICA
VOE, individually and on behalf of all others
similarly situated,

                           Plaintiffs,

             - against -

DAMIA HARRIS-MADDEN, as Commissioner of
the New York State Office of Children and Family
Services; KRISTIN GLEESON, as Director of
Statewide Central Register of Child Abuse and
Maltreatment, and Acting Associate Commissioner
of Child Welfare and Community Services; and
STEVEN CONNOLLY, as Director of the Bureau
of Special Hearings,

                           Defendants.

---------------------------------------------------------------- X

      26-cv-01606 (GBD) (HJR)

# MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS

                           LETITIA JAMES
                           Attorney General
                           State of New York
                           *Attorney for Defendants*
                           28 Liberty Street
                           New York, New York 10005

Elizabeth B. Gates
Special Litigation Counsel
Ihaab Syed
Assistant Attorney General
    *of Counsel*

# TABLE OF CONTENTS

**Page(s)**

TABLE OF CONTENTS.........................................................................................................i

TABLE OF AUTHORITIES .................................................................................................ii

PRELIMINARY STATEMENT ............................................................................................ 1

    A.    Statutory and Regulatory Framework........................................................ 4

    B.    SCR Checks and Employment..................................................................... 7

    C.    Administrative Review ................................................................................. 8

    D.    Administrative Hearing................................................................................ 9

    E.    Changes to the Process............................................................................... 10

    F.    The Action ................................................................................................... 11

LEGAL STANDARD............................................................................................................. 12

ARGUMENT .......................................................................................................................... 13

    I.    ROE AND VOE LACK STANDING ...................................................... 13

    II.    COURTS HAVE ROUTINELY REJECTED "DELAY" CLAIMS.............................. 15

    III.    PLAINTIFFS FAIL TO STATE A PROCEDURAL DUE PROCESS CLAIM.......... 18

    A.    Plaintiffs Have Not Alleged a Protected Liberty Interest ............................... 18

    B.    Plaintiffs Cannot Establish That They Were Deprived of Due Process ...................... 22

CONCLUSION....................................................................................................................... 25

CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(c)........................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ashcroft v. Iqbal*,
    556 U.S. 662 (2009)..................................................................................................13

*Barzilay v. City of N.Y.*,
    610 F. Supp. 3d 544 (S.D.N.Y. 2022).................................................................20, 21, 22

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007)..................................................................................................13

*Brito v. Mukasey*,
    521 F.3d 160 (2d Cir. 2008).....................................................................................14

*Bryant v. N. Y. State Educ. Dep't*,
    692 F.3d 202 (2d Cir. 2012).....................................................................................18

*Butler v. Obama*,
    814 F. Supp. 2d 230 (E.D.N.Y. 2011) .....................................................................15

*Calzerano v. Bd. of Trs. of Police Pension Fund*,
    877 F. Supp. 161 (S.D.N.Y. 1995)...........................................................................23

*Capogrosso v. Gelbstein*,
    2019 WL 4686448 (E.D.N.Y. Sept. 25, 2019) ........................................................21

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532 (1985)........................................................................................ passim

*Codd v. Velger*,
    429 U.S. 624 (1977)..................................................................................................20

*Doe v. Combs*,
    2026 WL 742650 (2d Cir. Mar. 17, 2026)...............................................................15

*Flynn v. Bloomingdale*,
    2023 WL 4832223 (2d Cir. July 28, 2023)..............................................................25

*Furman v. Rich*,
    2020 WL 3975469 (E.D.N.Y. July 14, 2020)..........................................................17

*Gallagher v. N.Y. City Health & Hosps. Corp.*,
    2017 WL 4326042 (S.D.N.Y. Sept. 20, 2017)........................................................18

*Goldberg v. Kelley*,
    397 U.S. 254 (1970).................................................................................................22

*Grullon v. ACS*,
    2021 WL 981848 (S.D.N.Y. Mar. 16, 2021) ...............................................................19

*Gyadu v. Workers' Comp. Comm'n*,
    930 F. Supp. 738 (D. Conn. 1996).............................................................................17

*Harris v. Queens Cnty. Dist. Atty's Off.*,
    2012 WL 6630034 (E.D.N.Y. Sept. 15, 2012) .........................................................21

*Holcombe v. Ingredients Sols., Inc.*,
    797 F. App'x 630 (2d Cir. 2020) ..............................................................................15

*Huda v. N.Y. City Health & Hosps. Corp.*,
    2021 WL 1163975 (S.D.N.Y. Mar. 26, 2021) ..........................................................20

*Ingber v. N.Y. City Dep't of Educ.*,
    2014 WL 6888777 (S.D.N.Y. Dec. 8, 2014) ............................................................20

*Isaacs v. Bowen*,
    865 F.2d 468 (2d Cir. 1989).......................................................................................17

*Kentucky v. Graham*,
    473 U.S. 159 (1985)......................................................................................................1

*Koehler v. New York City*,
    2005 WL 3502042 (S.D.N.Y. Dec. 20, 2005) ..........................................................19

*LaForgia v. Davis*,
    2004 WL 2884524 (S.D.N.Y. Dec. 14, 2004) ..........................................................18

*Liberty Cable Co. v. City of N.Y.*,
    60 F.3d 961 (2d Cir. 1995).........................................................................................17

*Locurto v. Safir*,
    264 F.3d 154 (2d Cir. 2001).......................................................................................25

*Lujan v. Def. Wildlife*,
    504 U.S. 555 (1992)...............................................................................................14, 15

*Makarova v. United States*,
    201 F. 3d 110 (2d Cir. 2000)................................................................................. 12-13

*Martin v. MTA Bridges & Tunnels*,
    2008 WL 2796640 (S.D.N.Y. July 17, 2008) ..........................................................23

*Mathews v. Eldridge,*
    424 U.S. 319 (1976)..............................................................................................17, 22

*McCaul v. Ardsley Union Free Sch. Dist.,*
    514 F. App'x 1 (2d Cir. 2013) .............................................................................19, 21

*McConnell v. FEC,*
    540 U.S. 93 (2003)......................................................................................................14

*Meimaris v. Royce,*
    2019 WL 4673572 (S.D.N.Y. Sep. 25, 2019)............................................................13

*Morris v. Lindau,*
    196 F.3d 102 (2d Cir.1999).........................................................................................18

*NYCLU v. Grandeau,*
    528 F.3d 122 (2d Cir. 2008)........................................................................................13

*Ocean World Lines, Inc. v. Unipac Shipping, Inc.,*
    2016 WL 5339408 (S.D.N.Y. Mar. 14, 2016) ...........................................................14

*Patterson v. City of Utica,*
    370 F.3d 322 (2d Cir. 2004).......................................................................................20

*Paul v. Davis,*
    424 U.S. 693 (1976)..............................................................................................18, 21

*Payson v. Bd. of Educ. of Mount Pleasant Cottage Sch., USFD,*
    2017 WL 4221455 (S.D.N.Y. Sept. 20, 2017)..............................................................1

*Radolf v. Univ. of Conn.,*
    364 F. Supp. 2d 204 (D. Conn. 2005).........................................................................23

*Sadallah v. City of Utica,*
    383 F.3d 34 (2d Cir. 2004)..........................................................................................21

*Santosky v. Kramer,*
    455 U.S. 745 (1982)....................................................................................................23

*Segal v. City of N.Y.,*
    459 F.3d 207 (2d Cir. 2006)........................................................................................22

*Shipping Fin. Serv. Corp. v. Drakos,*
    140 F.3d 129 (2d Cir. 1998)........................................................................................13

*Tasini v. N.Y. Times Co., Inc.,*
    184 F. Supp. 2d 350 (S.D.N.Y. 2002).........................................................................13

*Valmonte v. Bane*,
     18 F.3d 992 (2d Cir. 1994)........................................................................................11, 19, 22

*Velez v. Levy*,
     401 F.3d 75 (2d Cir. 2005).......................................................................................18

*Weinstein v. Trump*,
     2017 WL 6544635 (S.D.N.Y. Dec. 21, 2017) ........................................................14

*Wright v. Del Friscos of N.Y.*,
     2026 WL 618161 (Mar. 5, 2026) .............................................................................13

**Federal Statutes**

42 U.S.C. § 1983........................................................................................................2
42 U.S.C. § 9858f(c)(1)(D)(viii)................................................................................15

**State Statutes**

§ 1012.........................................................................................................................5

SSL

     § 390-b .................................................................................................................15
     § 411 *et seq.* .........................................................................................................5
     § 422........................................................................5, 7, 8, 9, 10, 11, 14, 15, 24,
     § 424(6)(a) ...........................................................................................................5
     § 424-a ........................................................... 2, 7, 9, 10, 11, 19, 21-22, 24

**State Regulations**

18 N.Y.C.R.R.

     § 413.4..................................................................................................................15
     § 434.1-11 ............................................................................................................9, 24
     § 434.6..................................................................................................................9
     § 434.7..................................................................................................................9
     § 434.8..................................................................................................................8, 9
     § 434.10................................................................................................................10
     § 434.11................................................................................................................10

Defendants Dr. DaMia Harris-Madden, as Commissioner of the New York State Office of Children and Family Services ("OCFS"), Kristin Gleeson ("Gleeson"), as Associate Commissioner of Child Welfare and Community Services, sued herein as "Director of Statewide Central Register of Child Abuse and Maltreatment, and Acting Associate Commissioner of Child Welfare and Community Services,"[1] and Steve Connolly, Director of Special Hearings, sued herein as "Steven Connolly, Director of the Bureau of Special Hearings" (collectively, "Defendants"),[2] by their attorney, Letitia James, Attorney General of the State of New York, respectfully submit this memorandum of law in support of their motion to dismiss the Complaint, ECF No. 1 ("Compl."), pursuant to FRCP 12(b)(1) and (6).

## PRELIMINARY STATEMENT

Plaintiffs Patrick Poe ("Poe"), Rachel Roe ("Roe"), and Veronica Voe ("Voe") (collectively, "Plaintiffs") are the subjects of "indicated" reports of child abuse or maltreatment maintained by the New York Statewide Central Register of Child Abuse and Maltreatment (the "SCR"). They seek to overturn and seal findings of child abuse or maltreatment and seek employment in a position of unique trust requiring an SCR database check: jobs with substantial contact with children or other vulnerable populations. Plaintiffs allege that OCFS's process for evaluating requests to amend and seal indicated reports of child abuse or maltreatment takes too

---

[1] Brian Kelley ("Kelley"), as Director of the Statewide Central Register of Child Abuse and Maltreatment, is to be automatically substituted for Gleeson in her former capacity as Director of the Statewide Central Register of Child Abuse and Maltreatment pursuant to Federal Rules of Civil Procedure ("FRCP") 25(d).

[2] As this suit is exclusively brought against Defendants in their official capacities, all Defendants other than Dr. Harris-Madden should be dismissed as duplicative. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985) ("[A]n official-capacity suit is to . . . be treated as a suit against the [government] entity. It is *not* a suit against the official personally, for the real party in interest is the entity." (emphasis in original) (citation omitted)); *cf. Payson v. Bd. of Educ. of Mount Pleasant Cottage Sch.*, *USFD*, 2017 WL 4221455, at *22 (S.D.N.Y. Sept. 20, 2017) (dismissing claims against individual defendants in their official capacities as agents of Board of Education in light of claims asserted directly against Board of Education).

1

long, in violation of their alleged procedural due process rights. Proceeding pseudonymously, they bring suit under 42 U.S.C. § 1983, individually and on behalf of a putative class. But there is a fundamental flaw in Plaintiffs' suit: courts in this Circuit have routinely rejected due process challenges premised exclusively on purported administrative delay.

As relevant here, the SCR maintains records regarding confirmed subjects of indicated reports of child abuse and maltreatment in New York State, as determined after investigation by the local social services district, i.e., county-level Child Protective Services (the local entities are referred to herein for ease as "CPS"). The SCR was initially created to centralize processes around CPS intake as a response to the fact that abuse—particularly child abuse—is, at times, ignored or swept under the rug. Among other things, the SCR is also responsible for processing background checks for positions of employment or licensure involving access to vulnerable populations (like children). *See* New York Social Services Law ("SSL") § 424-a.

Since the 1990s, the SCR has radically changed, including through prior litigation, and a series of extensive statutory reforms that were put into place in 2022. Those changes were designed to provide further procedural protections to the subjects of indicated reports. The current procedures applicable to the SCR received much fanfare when enacted—including (as addressed below) from Plaintiffs' Counsel. Contrary to Plaintiffs' contentions in the Complaint, the SCR as it now exists strikes a critical balance: upholding both the interest of the people of the State of New York in protecting children from abuse and maltreatment and the due process rights of subjects of indicated reports.

As addressed in further detail below, the current SCR provides for the following processes (among others): (1) all levels of review require the allegations be substantiated by a "fair preponderance of the evidence"; (2) OCFS does not inform agencies (employers or licensors) conducting database checks of an indicated report until after any timely administrative

2

appeal is completed[3]; and (3) neither OCFS policy nor law prohibits applicants for most positions from being hired even while administrative appeals are being processed. These applicants may even begin working with vulnerable populations so long as they do not work unsupervised with vulnerable populations.[4] Given the extensive protections afforded by OCFS's processes that resulted from these changes, Plaintiffs' claims fail as a matter of law, and the Complaint should be dismissed in its entirety for multiple independent reasons.

*First*, the claims of Roe and Voe should be dismissed as they lack standing. As alleged, they are not actively seeking employment working with children or other vulnerable populations due to their indicated reports, making any alleged harm purely speculative. In addition, under current law, Roe and Voe can be hired for childcare employment while any challenge to their indicated reports is pending, and OCFS is statutorily prohibited from telling employers of the existence of any indicated reports until after their administrative appeals are complete. In other words, they have assumed that they will not gain employment without making any attempt to test that assumption. The greatest present barrier to their employment is their failure to seek it.[5]

*Second*, Plaintiffs' procedural due process claim should be dismissed. The overarching problem with Plaintiffs' suit is that courts have routinely rejected due process claims premised upon the types of claims here. The administrative hearings here are pre-deprivation hearings; Plaintiffs may potentially be deprived of an alleged liberty interest only when the administrative appeal is complete. In such circumstances, courts have routinely recognized that administrative

---

[3] As the Complaint focuses on SCR database checks in the context of potential employment, Defendants' Motion does as well. SCR database checks as to other opportunities, such as for foster care, are not addressed here as not relevant to Named Plaintiffs' allegations.

[4] Employment and licensing of persons providing foster care services (such as foster parents) are the exception to this rule due to the requirements of federal law. *See* 42 U.S.C. § 671(a)(20)(B).

[5] Moreover, as addressed in further detail in Part I, *infra*, Plaintiffs still have not revealed their identities in violation of their disclosure obligations under the Federal Rules. As a consequence, Defendants reserve their rights to further move to dismiss on subject matter jurisdiction or other grounds when Plaintiffs' identities are eventually revealed.

processes take time and have dismissed procedural due process claims premised purely on alleged delay. *But in any event*, on the face of the Complaint, all Plaintiffs swiftly received one level of review—an administrative review—during which they had the opportunity to present counterevidence, and CPS had the burden to prove facts "by a fair preponderance of the evidence." All told, Plaintiffs allege that they received an administrative review within 31 days of requesting an administrative appeal. Courts have also repeatedly blessed procedural structures like those at issue here—where a party gets a swift initial review and then a more extensive review subsequently.

*Third*, Plaintiffs' due process claim fails as they cannot establish the first element of such a claim: a protected liberty interest. To prevail on their due process claim, Plaintiffs must establish both "stigma" and a "plus," here meaning a tangible burden on their employment prospects. Under current law, Plaintiffs can establish neither. Because there has been no statement by OCFS about Plaintiffs to potential employers (let alone a false one), there is no stigma. Plaintiffs also cannot establish a tangible burden on their employment because they can still be hired and begin working while their administrative appeal is pending.

*Fourth*, Plaintiffs' allegations that they were deprived of appropriate "process" also fail. The administrative appeal process strikes the appropriate balance between the interests of the safety of the children of New York and the State in avoiding abuse and maltreatment and Plaintiffs in obtaining childcare employment.

## STATEMENT OF FACTS[6]

### A.        Statutory and Regulatory Framework

New York State's child protective framework originated with the Child Protective Services Act of 1973. Under the system established by the Legislature, the child protective

---

[6] The plausible and non-conclusory factual allegations of the Complaint are accepted as true herein only for purposes of this motion.

system is State-supervised but administered by CPS (which is not a part of OCFS). Among those

is the Administration for Children's Services, New York City's CPS agency ("NYC ACS").[7]

The Child Protective Services Act originated in response to a disturbing rise in the

number of children who died due to abuse or neglect and the troubling fact that the State of New

York had "consistently uncovered a greater incidence of child abuse than ha[d] been officially

recorded." *See* Ch. 1039, 180th Gen. Assemb., Reg. Sess. (N.Y. 1973) at 9 (estimating deaths of

up to 500 children due to child abuse per year).

A key component of the Child Protective Services Act is the SCR, operated by OCFS.

*See* SSL § 411 *et seq.* The SCR provides a system for the receipt of reports of suspected abuse or

maltreatment of children. *See id.* § 411. The SCR receives reports of suspected child abuse and

maltreatment and transmits such reports to the CPS agency, including NYC ACS, for

investigation. *Id*. §§ 56, 61, 422(2)(a), 423(1), 424. As alleged in the Complaint, the SCR

receives over 100,000 reports of suspected child abuse or maltreatment per year.[8] Compl. ¶ 3.

When the SCR receives a report that could reasonably constitute child abuse or

maltreatment as determined by the SCR's intake specialists utilizing statutorily established

definitions, it is immediately transmitted to CPS for investigation. *See* SSL § 422(2)(b); Family

Court Act § 1012. CPS must evaluate the risks to the child and any other children in the

household. *See* SSL § 424(6)(a). Among the statutory and regulatory requirements for CPS

investigations, CPS must notify in writing the subject(s) of the report and any other person

named in the report of the report's existence and their respective rights regarding the report. *Id.*

Such reports and information related to those reports "shall be confidential and shall only be

---

[7] CPS is not a party to this suit. Nonetheless, many of the allegations in the Complaint are about activities exclusively within their control, not OCFS. *See, e.g.*, Compl. ¶¶ 24-33, 122.
[8] In 2024, the SCR received 280,920 calls. *See* OCFS, *2024 OCFS Annual Report*, https://ocfs.ny.gov/reports/annual-ocfs/2024-OCFS-Annual-Report.pdf at 22.

made available to" specified persons or entities as detailed in the law for specific legal purposes.
*Id.* § 422(4)(A).

CPS must determine within 60 days whether the report is "indicated" or "unfounded."[9]
*Id.* § 424(7). The standard for an indicated report is "a fair preponderance of the evidence."

In 2025, the 137,215 reports transmitted to CPS were categorized as follows:

| Conclusion Regarding Report | Totals | Percentage of Total |
|---|---|---|
| Unfounded | 87,971 | 64.1% |
| Indicated | 30,192 | 22.0% |
| FAR | 16,482 | 12.0% |
| Open | 2,570 | 1.9% |

*See* OCFS, *2025 Statewide | Registered CPS Reports by Outcome* (March 20, 2026),

https://public.tableau.com/app/profile/ocfs.nys/viz/CPSReports4/Home (under "By Outcome,"

choose "State"; then choose "2025" from "Intake Year" dropdown). CPS determined the

allegations contained in 64.1% of the reports were not supported by a fair preponderance of the

evidence. *See id.* CPS determined only 22% of the reports were supported by a fair

preponderance of the evidence. *See id.* As alleged in the Complaint, Plaintiffs' cases are among

the cases where CPS determined that a fair preponderance of the evidence supported a

conclusion that child abuse or maltreatment had occurred. *See* 2024 OCFS Ann. Rep. at 23.

After CPS completes its investigation, there are then two paths for the subject to

challenge both the indication; and whether the allegations in the report are "relevant and

---

[9] Certain CPS agencies (e.g., NYC ACS) also designate certain reports as needing a Family Assessment Response ("FAR"), an alternative approach to providing child protection that focuses on providing solutions to family problems by identifying informal and formal supports to meet their needs and increase their ability to care for their children. *See* OCFS, *Family Assessment Response*, https://ocfs.ny.gov/programs/cps/assessment-response.php (last visited June 2, 2026).

reasonably related" to working with children or other vulnerable populations ("R&R").[10] Initially, the subject of a report has 90 days from notice to request the report be amended to unfounded.[11] SSL § 422(8)(a)(i). Pursuant to SSL § 424-a, the subject of an indicated report may also request that the report be amended to unfounded when they seek employment, licensure, or certification in certain fields including childcare, provided they have not previously exhausted their administrative appeal rights through SSL § 422. *See id.* §§ 424-a(1)(e)(v), (2)(c).

The subsequent process (the "Administrative Appeal") consists of two levels of review: a first-level administrative review (the "Administrative Review") conducted by a dedicated team of OCFS employees specifically trained to complete these reviews, *id.* § 422(8)(a), and a second-level administrative hearing conducted by an Administrative Law Judge ("ALJ") employed by OCFS's Bureau of Special Hearings (the "Administrative Hearing"), *id.* § 422(8)(b).

## B. SCR Checks and Employment

The existence of an indicated report is confidential and cannot be disclosed except as expressly authorized by statute. *Id.* § 422(4). Only specified entities involved in the care of children or other vulnerable populations can ask OCFS to perform SCR database checks for employees or potential employees. *See id.* §§ 424-a(1)(a)-(d-1), (3)-(4). Consequently, the potential impact(s) related to the disclosure of an indicated report is limited to those employers authorized to conduct a database check pursuant to SSL 424-a.

During the pendency of an Administrative Appeal, OCFS does not disclose the existence of an indicated report to potential employers. *Id.* § 424-a(1)(e). Moreover, during the Administrative Appeal, subjects of indicated reports can still be hired and begin working, they

---

[10] R&R has been more narrowly defined herein than as otherwise used by OCFS.

[11] The right to request a report be amended is also provided when the subject alleges that they did not receive notification that the report was indicated. This is established in policy and is a longstanding practice. *See* OCFS, *21-OCFS-LCM-13* (June 4, 2021), https://ocfs.ny.gov/main/policies/external/ocfs_2021/LCM/21-OCFS-LCM-13.pdf at 2.

just may not work unsupervised with children. *Id*. § 424-a(1)(b)(i)(A). It is only *after* both the Administrative Review and Administrative Hearing are complete and a decision has been issued, which finds that (a) there is a fair preponderance of the evidence that the subject committed the abuse or maltreatment and (b) that the abuse or maltreatment is R&R, that OCFS may disclose that an individual is the subject of an indicated report. *Id*. § 424-a(1)(b)(i)(A).

## C. Administrative Review

During the Administrative Review, the subject of the indicated report gets the opportunity to be heard in the form of paper submissions, with the burden of proof on CPS, which must establish the allegations by a fair preponderance of the evidence. *See* 18 N.Y.C.R.R. § 434.8(d). OCFS staff determine (1) whether there is a fair preponderance of the evidence that the subject of the report committed the abuse or maltreatment and if so, (2) whether the abuse or maltreatment is R&R. SSL §§ 422(8)(a)(ii), 424-a(1)(e)(iii). In evaluating whether the abuse or maltreatment is R&R, OCFS is directed to consider a variety of factors including evidence of rehabilitation, "[h]ow much time has passed" since the last indicated report, evidence that the subject of the report "successfully participated in counseling, treatment, or a self-help group," and whether "since the report was indicated, the subject  demonstrated success working in childcare." *See* OCFS, *21-OCFS-ADM-33* (Dec. 23, 2021), https://ocfs.ny.gov/main/policies/external/ocfs_2021/ADM/21-OCFS-ADM-33.pdf at 4; OCFS, 2026 N.Y. State CPS Manual (Feb. 2026), https://ocfs.ny.gov/programs/cps/manual/2026/2026-CPS-Manual.pdf ("CPS Manual") at C-6 (listing these factors).[12] During the Administrative Review, the subject of the indicated report may be represented by counsel and can submit

---

[12] *See also* Kenya Franklin & Shakira Paige, Rise Magazine, *New SCR Legislation Took Effect January 1st: What it Means for Parents* (Jan. 18, 2022), https://www.risemagazine.org/2022/01/what-new-scr-legislation-means-for-parents/ ("Rise Magazine") (Plaintiffs' Counsel discussing factors considered in evaluating whether alleged abuse or maltreatment is R&R).

evidence contesting CPS's allegations. *See 21-OCFS-ADM-33* at 5.

Following the Administrative Review, there are three potential results. If OCFS determines that there is not a fair preponderance of the evidence to support an indicated report, OCFS will amend the report to unfounded, legally seal the report, and notify the subject. SSL §§ 422(8)(a)(iii), 424-a(1)(e)(iii). If OCFS determines that there is a fair preponderance of the evidence to support a finding that the child abuse or maltreatment was committed but that the acts are not R&R, then OCFS will automatically refer the case to the Bureau of Special Hearings for an Administrative Hearing but will not disclose the existence of the report to employers (in other words, it will be akin to those with no indicated report). *See id.* §§ 422(8)(a)(iv), 424-a(1)(e)(iv)(A). If OCFS determines the allegations contained in the report are supported by a fair preponderance of the evidence and the allegations are R&R, then the SCR informs the subject of the indicated report and automatically refers the case to the Bureau of Special Hearings for an Administrative Hearing. *Id.* §§ 422(8)(a)(v), 424-a(1)(e)(v).

### D. Administrative Hearing

The second stage of an Administrative Appeal is the Administrative Hearing. *See* 18 N.Y.C.R.R. §§ 434.1-11. The burden of proof at the Administrative Hearing is again on CPS. The ALJ reviews the proffered documentation and other evidence to determine if the indicated report (a) is supported by a fair preponderance of the evidence that the subject committed the alleged abuse or maltreatment, and (b) if so, whether such abuse or maltreatment is R&R. SSL §§ 422(8)(c), 424-a(1)(e)(vi)-(x). During the Administrative Hearing, the subject of the report may be represented by counsel, call witnesses, ask for the ALJ's assistance in issuing subpoenas, submit evidence in either documentary or testimonial form contesting CPS's allegations, and cross-examine witnesses. *See* 18 N.Y.C.R.R. §§ 434.6(a), 434.7(a), 434.8(d); OCFS, *Bureau of Special Hearings, General Questions for All Hearings*, https://ocfs.ny.gov/programs/special-

hearings/FAQ-general.php (last visited May 12, 2026). The subject may also present evidence that speaks to positive actions taken since the alleged abuse or maltreatment occurred, i.e., rehabilitation. *See* 18 N.Y.C.R.R. § 434.10(g); *21-OCFS-ADM-33* at 4.

Following the Administrative Hearing, OCFS Bureau of Special Hearings will issue a decision that sets forth its determination with respect to the issues raised at the Administrative Hearing. 18 N.Y.C.R.R. § 434.11. If it is determined by a fair preponderance of the evidence that a subject has committed the child abuse or maltreatment *and* that the abuse or maltreatment is R&R, OCFS will notify the subject of the indicated report of that determination. SSL §§ 422(8)(c), 424-a(1)(e)(viii)-(ix); 18 N.Y.C.R.R. § 434.11(c). If the subject is dissatisfied with the hearing result, they may commence a New York Civil Practice Law and Rules ("CPLR") article 78 proceeding challenging the decision after hearing. *See* CPLR § 7801 *et seq*.

### E.  Changes to the Process

The process described above is markedly different from past iterations—including those that were the subject of past litigation. Over the years, there have been numerous changes including legislative changes in 2022. *See 21-OCFS-LCM-13*.[13] Several are relevant here. *First*, the evidentiary standard is higher: now, at each stage CPS must prove the allegations by a fair preponderance of the evidence, whereas before, CPS was merely required to determine "some credible evidence" existed to indicate a report. *See id*. at 5. *Second*, OCFS does not disclose to an employer that a person is the subject of an indicated report until after the Administrative Appeal is complete. *See* SSL § 424-a(1)(e)(ix). Previously, after a report was indicated, OCFS would disclose the existence of the report to potential employers before giving the subjects of those

---

[13] *Cf.* Rise Magazine (Plaintiffs' Counsel detailing reforms to the SCR); *see also* N.Y.U. Fam. Def. Clinic, *An Overview of Recent State Central Register Laws and Their Impact on Families in New York*, (May 5, 2022), https://empirejustice.org/wp-content/uploads/2022/05/5-5-2022-PPT-Materials.pdf ("SCR Overview") (prepared by Plaintiffs' Counsel).

reports an opportunity for an Administrative Hearing under a "fair preponderance of the evidence" standard. *See Valmonte v. Bane*, 18 F.3d 992, 996-97 (2d Cir. 1994) (outlining previous procedures for "non-" and "post-deprivation" hearings). *Third*, while an Administrative Appeal is pending, employers no longer need to justify the hiring of the subject of an indicated report (because they do not know the report exists). *Fourth*, subjects of indicated reports have been given additional opportunity to contest whether their reports are R&R and thus disclosable to potential employers. *See 21-OCFS-ADM-33* at 4. R&R reviews are now conducted during all Administrative Hearings challenging indicated reports. *See id*. *Fifth*, indicated reports for maltreatment are now no longer disclosed after eight years. Previously, all reports not successfully appealed could be disclosed to potential employers until ten years after the youngest child named in the report turned eighteen. *See* § 424-a(1)(e)(iv)(B). *Sixth*, the Administrative Review is stayed pending any corresponding Family Court Article 10 proceedings. SSL §§ 422(8)(a)(ii), 424-a(1)(e)(ii). *Seventh,* if the subject of an indicated report is the respondent in an Article 10 proceeding regarding the same allegations and either CPS withdraws the petition with prejudice, the Family Court finds in favor of the respondent on the merits, or the Court dismisses the petition without making a finding, OCFS must apply an irrebuttable presumption in favor of the subject during the Administrative Appeal. SSL §§ 422(8)(b)(ii), 424-a(1)(e)(iv).

### F. The Action

As alleged in the Complaint, Plaintiffs were all subjects of indicated reports of child abuse or maltreatment. Compl. ¶¶ 14-16.

Poe alleges that he had a "physical confrontation" with his ex-wife in front of his young children. *Id.* ¶ 55. Later, in applying for a job, he claims he was "was baffled to learn that he had an indicated report." *Id.* ¶ 57. He requested this report be "amended to unfounded or sealed" on September 9, 2025. *Id.* ¶ 58. On "October 7, 2025, OCFS denied his request after administrative

11

review"—28 days from the day he requested an Administrative Appeal. *Id.* Poe was slated to have his Administrative Hearing on April 22, 2026 (*id*. ¶ 14), approximately six-and-a-half months after the Administrative Review was complete.

Roe alleges that she was employed "as an assistant teacher at a daycare center" and had been for "over five months." *Id*. ¶ 62. Roe alleges that she had an incident with children at the daycare that was so unsettling that "another assistant teacher witnessed the interaction and reported it to a program director, who reported the incident to the SCR." *Id.* ¶¶ 62-63. In other words, Roe's behavior so troubled her colleagues that two separate childcare workers reported her behavior (first to the director, then the director to the SCR).[14] Due to her behavior at the daycare, Roe is the subject of an indicated report. *Id.*¶ 64. Roe alleges that she "has foregone multiple job opportunities," that she "withdrew her application" with one employer, and that she has "been unable to apply for paid work." *Id*. ¶ 66.

Voe alleges that she was reported to the SCR after her probation officer discovered her four-year-old daughter at home alone. *Id*. ¶¶ 69-70. On February 3, 2025, Voe requested that her indicated report be amended to unfounded and sealed. Compl. ¶ 71. On March 6, 2025 (*i.e.*, within 31 days of Voe's request for Administrative Appeal to the SCR), OCFS completed its Administrative Review, upheld the indication and found it to be R&R. *See id.*

## **LEGAL STANDARD**

An action is properly dismissed under FRCP 12(b)(1) "when the district court lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F. 3d 110, 113 (2d Cir. 2000). "The burden of proving jurisdiction is on the party asserting it." *Wright v. Del Friscos of N.Y.*, 2026 WL 618161 (Mar. 5, 2026) (Daniels, J.) (citation omitted). Accordingly,

---

[14] Roe does not allege whether she is still employed with the daycare center (although under OCFS's policies she could be), or if she was terminated. *See id.* ¶¶ 60-66.

12

where a defendant raises a challenge to the Court's jurisdiction, "the burden is on the plaintiff to satisfy the Court, as factfinder, of the jurisdictional facts." *Tasini v. N.Y. Times Co., Inc.*, 184 F. Supp. 2d 350, 353 (S.D.N.Y. 2002) (cleaned up). "[J]urisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences favorable to the party asserting it." *Shipping Fin. Serv. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998). In assessing subject matter jurisdiction, the Court may go outside the pleadings to resolve disputed factual issues on a FRCP 12(b)(1) motion. *Makarova*, 201 F.3d at 113 (citations omitted)).

To survive a motion to dismiss under FRCP 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Where a plaintiff has failed to "nudge[] [her] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *accord Iqbal*, 556 U.S. at 680.

## ARGUMENT

### I.    ROE AND VOE LACK STANDING

The Court lacks subject matter jurisdiction over Roe and Voe's claims because they have failed to meet their burden to establish standing.[15] *Meimaris v. Royce*, 2019 WL 4673572, at *4 (S.D.N.Y. Sep. 25, 2019) (Daniels, J.) ("The burden of proof applies to 'each claim and form of relief sought.'" (citation omitted)), *aff'd*, 2021 WL 5170725 (2d Cir. Nov. 8, 2021). It is well settled that, "the irreducible constitutional minimum of standing contains three elements":

---

[15] For the same reasons that Roe and Voe lack standing, their claims are also not ripe. *NYCLU v. Grandeau*, 528 F.3d 122, 133 (2d Cir. 2008) (affirming dismissal of challenge to government policy under prudential ripeness doctrine that was "in many ways contingent on future events").

(1) plaintiff suffered "an injury in fact—an invasion of a legally protected interest which is (a) concrete and particularized . . . and (b) actual or imminent, not conjectural or hypothetical"; (2) the injury is "fairly traceable to the challenged action of the defendant"; and (3) it is "likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Lujan v. Def. Wildlife*, 504 U.S. 555, 560-61 (1992) (cleaned up); *see also Weinstein v. Trump*, 2017 WL 6544635, at \*3 (S.D.N.Y. Dec. 21, 2017) (Daniels, J.).

Here, Roe and Voe cannot establish an "actual" or "imminent" injury. *See Lujan*, 504 U.S. at 560-61. Roe and Voe allege that they are not actively seeking childcare employment, notwithstanding that their indicated reports would not bar them from such employment and would not be disclosed to a prospective employer during their ongoing Administrative Appeal. *See* Compl. ¶¶ 66, 72; SSL §§ 422(8)(a)(iv); 424-a(1)(e). Consequently, any alleged injury is purely hypothetical: Roe and Voe do not know if they would be able to secure employment if they sought it. *See Brito v. Mukasey*, 521 F.3d 160, 168 (2d Cir. 2008) (finding standing lacking where plaintiff alleged potential for injury that was "born of nothing more than hypothesis and conjecture"); *see also Ocean World Lines, Inc. v. Unipac Shipping, Inc.*, 2016 WL 5339408, at \*3 (S.D.N.Y. Mar. 14, 2016) ("The Supreme Court has repeatedly reiterated that threatened injury must be *certainly impending* to constitute injury in fact, and that allegations of *possible* future injury are not sufficient.") (emphases in original) (cleaned up).

Plaintiffs also cannot establish that their alleged injury is traceable to OCFS's actions as opposed to their own. To the extent Roe and Voe have been harmed as to their employment prospects in childcare, it is a direct result of their own conduct.[16] *See, e.g.*, *McConnell v. FEC*,

---

[16] Even if Plaintiffs had sought employment, and been denied, such denial would not be traceable to OCFS. OCFS does not preclude childcare employers from hiring and permitting the subjects of indicated reports to begin working during the Administrative Appeal process. SSL §§ 422(8)(a)(iv); 424-a(1)(e). An employer's theoretical decision not to hire Roe and Voe would be "the result of the independent action of some third party not before the court" and would not

540 U.S. 93, 228 (2003) (holding plaintiffs' injury stemming from "personal choice" was not "fairly traceable" to the challenged statute), *overruled on other grounds by Citizens United v. FEC*, 558 U.S. 310 (2010); *Holcombe v. Ingredients Sols., Inc.*, 797 F. App'x 630, 633 (2d Cir. 2020) (summary order) (finding plaintiff's injury stemmed from a voluntary decision and thus was not fairly traceable to defendants' alleged misconduct); *Butler v. Obama*, 814 F. Supp. 2d 230, 234-35 (E.D.N.Y. 2011) (Bianco, J.) (dismissing for lack of standing challenges to "Obamacare," where plaintiff asserted "his belief that he will be subject to a future injury once the individual mandate [for "Obamacare"] becomes effective").

As Roe and Voe's assumptions regarding the hypothetical future impacts of OCFS's policies are insufficient to confer standing, their claims should be dismissed.[17]

## II.    COURTS HAVE ROUTINELY REJECTED "DELAY" CLAIMS

The heart of the Complaint is Plaintiffs' allegation that the timeframe of the Administrative Appeal has impeded upon their due process rights.[18] The Complaint should be

---

be fairly traceable to OCFS. *Lujan*, 504 U.S. at 560.

[17] Plaintiffs have refused to reveal their identities to Defendants despite the plain language of FRCP 10(a) ("The title of the complaint must name all the parties[.]") and their failure to adhere to the initial disclosure obligations contained within FRCP 26(a)(1)(A) ("a party must, without awaiting a discovery request, provide to the other parties: (i) the name and, if known, the address . . ."); *Doe v. Combs*, 2026 WL 742650, at *1 (2d Cir. Mar. 17, 2026) (summary order) (obligation that Plaintiffs reveal their identities "though seemingly pedestrian, serves the vital purpose of facilitating public scrutiny of judicial proceedings and therefore cannot be set aside lightly"). As Defendants do not know who has brought a lawsuit against them, Defendants reserve the right to move to dismiss on any additional relevant grounds when Plaintiffs disclose their identities, including as to standing or mootness.

Defendants further note that on the face of the Complaint, it is clear that Voe has a criminal conviction. Compl. ¶¶ 69-70. Both federal and state law prohibit individuals with certain felony convictions from working in childcare. *See* 42 U.S.C. § 9858f(c)(1)(D)(viii) (categorizing people convicted of certain felonies as ineligible for employment by a federally funded childcare provider); SSL § 390-b (adopting § 9858f(c)(1)(D)'s prohibition on employing childcare workers with specified felony convictions); 18 N.Y.C.R.R. § 413.4(e) (same). If Voe were barred from childcare employment, she would lack standing to challenge OCFS's procedures as she would have no injury.

[18] Speed is not the only consideration in evaluating the effectiveness of a process. Indeed, in

dismissed as any "delay" related claim is inconsistent with due process case law.

The hearings here are textbook pre-deprivation hearings. *See Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 545-46 (1985) ("*Loudermill*") (pre-deprivation hearing "need not be elaborate" so long as it provides "[t]he essential requirements of due process," which are "notice and an opportunity to respond"). Plaintiffs' Counsel apparently agrees. *See* SCR Overview at 10 (prepared by Plaintiffs' Counsel, describing the SCR's "Governing Law" as providing "pre-deprivation hearing (before employers informed of record) at fair preponderance of the evidence standard"). Therefore, Plaintiffs have not yet been deprived of a liberty interest and only—arguably—may be so deprived when the Administrative Appeal process is complete (and only if the report is upheld as indicated and found to be R&R).

Courts have dismissed procedural due process claims, like those here, premised purely on delay. Courts have concluded that "a delay amounts to a due process violation only where it renders the prescribed procedures meaningless in relation to the private interest at stake. The mere assertion that state remedies are lengthy will not render state remedies inadequate under the Due Process Clause . . . ." *Dukes v. N.Y. City Emps.' Ret. Sys.*, 361 F. Supp. 3d 358, 373 (S.D.N.Y. 2019) (cleaned up); *id.* at 374 ("a two year delay in processing an application. . . is not so great as to automatically constitute a due process violation."); *Isaacs v. Bowen*, 865 F.2d 468, 477 (2d Cir. 1989) (19-month delay in processing benefits did not violate due process because

---

evaluating whether the alleged child abuse or maltreatment is R&R, ALJs consider factors such as "how much time has passed" since the last indicated report and evidence that the person has "successful[ly] participat[ed] in counseling, treatment, or a self-help group," and if "since the report [the person] has demonstrated success working in childcare." *See* CPS Manual at C-6 (listing factors that must be considered in determining if indicated report is R&R). It may be in the interest of the subjects of indicated reports who did commit acts of child abuse or maltreatment for time to pass before requesting an Administrative Appeal because they are able to engage in rehabilitative acts or treatment and are more likely to demonstrate that the prior abuse or maltreatment is not R&R, notwithstanding the fact that the report remains indicated.

16

such delay was not "remarkable in the Medicare, Social Security and employment benefits systems"); *Liberty Cable Co. v. City of N.Y.*, 60 F.3d 961, 964 (2d Cir. 1995) (collecting cases finding reasonable administrative delays of up to two years in processing benefits applications); *Furman v. Rich*, 2020 WL 3975469, at *5 (E.D.N.Y. July 14, 2020) ("[T]his court is not aware of any case in this Circuit upholding a procedural due process claim based purely on administrative delay."); *see also Mathews v. Eldridge,* 424 U.S. 319, 342 (1976) (10-to-11-month wait to appeal of denial of disability benefits did not violate due process). In accordance with extensive due process case law regarding purported "delays," the action should be dismissed.

Even if the Administrative Hearing is viewed as a post-deprivation hearing (it is not), the Administrative Appeal is still timely. On the face of the Complaint, Plaintiffs allege a six-and-a-half month timeframe (*see* Compl. ¶ 58 (Poe)), an 11-and-a-half month timeframe (*id*. ¶ 65 (Roe)), and a 13-month timeframe (*id*. ¶ 71 (Voe)). Poe's allegations are well within the nine-month time frame blessed by the Supreme Court in *Loudermill*, and *Loudermill* did not suggest that nine-months was an outer limit. *See* 470 U.S. at 546. For that reason, Plaintiffs' claims should be dismissed.[19] *See also Gyadu v. Workers' Comp. Comm'n*, 930 F. Supp. 738, 752 (D. Conn. 1996) ("[T]he mere assertion that state remedies are lengthy . . . will not render state remedies inadequate [for due process purposes] unless they are inadequate to the point that they are meaningless or nonexistent.") (cleaned up), *aff'd*, 129 F.3d 113 (2d Cir. 1997), *cert. denied*, 525 U.S. 814 (1998). The Complaint does not demonstrate that these adjudications

---

[19] Should the Court conclude that Plaintiffs have adequately alleged delay, Plaintiffs certainly have not stated a claim of undue delay as to the Administrative Review. The face of the Complaint makes clear that the Administrative Review rapidly processed Plaintiffs' challenges. Compl. ¶¶ 58, 71. The claims against Gleeson and Kelley should be dismissed as the Administrative Reviews are well within timeframes previously upheld by the Supreme Court. *See Loudermill,* 470 U.S. at 546.

constitute undue delay, particularly in light of the multiple procedural safeguards.

### III.    PLAINTIFFS FAIL TO STATE A PROCEDURAL DUE PROCESS CLAIM

Given extensive law dismissing similar "delay" cases, the Court should dismiss this suit on that basis alone. In any event, Plaintiffs claim fails for additional reasons. To state a procedural due process claim, Plaintiffs must allege: (1) a protected liberty interest; and (2) deprivation of that interest without adequate process. *See Bryant v. N. Y. State Educ. Dep't*, 692 F.3d 202, 218 (2d Cir. 2012). Plaintiffs can establish neither.

### A.  Plaintiffs Have Not Alleged a Protected Liberty Interest

Plaintiffs' claims should be dismissed because they have not articulated a protected liberty interest. A person's interest in their good reputation is not, by itself, a liberty or property interest sufficient to ground an actionable Due Process Clause claim. *See Paul v. Davis*, 424 U.S. 693, 711 (1976); *id.* at 706 (defamation alone insufficient to articulate protected interest); *Morris v. Lindau*, 196 F.3d 102, 114 (2d Cir.1999), *abrogated on other grounds*, *Lore v. City of Syracuse*, 670 F.3d 127 (2d Cir. 2012); *LaForgia v. Davis*, 2004 WL 2884524, at \*7-\*9 (S.D.N.Y. Dec. 14, 2004) (Daniels, J.). Reputational harm is not enough to state a claim. Rather, courts have developed a framework known as a "stigma plus" claim, by which Plaintiffs must allege: "(1) the utterance of a statement about her that is injurious to her reputation, that is capable of being proved false, and that . . . she claims is false" (the stigma); "and (2) some tangible and material state-imposed burden in addition to the stigmatizing statement" (the plus). *Velez v. Levy*, 401 F.3d 75, 87 (2d Cir. 2005) (cleaned up); *accord Gallagher v. N.Y. City Health & Hosps. Corp.*, 2017 WL 4326042, at \*3 (S.D.N.Y. Sept. 20, 2017) (Daniels, J.), *aff'd*, 733 F. App'x 3 (2d Cir. 2018) (summary order). Here, Plaintiffs can establish neither "stigma" nor the requisite "plus." Thus, their due process claim fails.

### 1.  Plaintiffs Fail to Allege Stigma

18

At the outset, Plaintiffs fail to plead the "stigma" element as they fail to allege either that OCFS made a statement to potential employers or that the statement was false.[20] Compl. ¶¶ 53-59 (Poe does not allege any statement made), 60-66 (nor does Roe), 67-73 (nor does Voe).

Under current law, Plaintiffs cannot state a defamation claim. OCFS does not advise employers that a potential employee has an indicated report until their Administrative Appeal has concluded (and only if the report is upheld and found to be R&R). SSL § 424-a(1)(e)(i)(B)(iv)(A). Thus, taking the allegations of the Complaint as true, there has been no "statement" by OCFS regarding Plaintiffs and there will not be unless either: (a) their reports are retained and determined R&R following their Administrative Appeals and—as to Roe and Voe—an employer requests an SCR check (*see id.* §§ 424-a(1)(a)-(d-1), (3)-(4)); or (b) the subject of the report did not appeal and the 90-day deadline after an attempted database check to file a § 424-a appeal has passed. SSL § 424-a(2)(c). Courts have consistently dismissed stigma plus claims where—as here—there is no publication of the allegedly derogatory information, and therefore, no stigma.[21] *See, e.g.*, *Koehler v. New York City*, 2005 WL 3502042, at *3 (S.D.N.Y. Dec. 20, 2005) (placing plaintiff's name on "ineligible list" and noting the charges in her

---

[20] The Second Circuit's decision in *Valmonte* is instructive. There, unlike here, a plaintiff had stated a procedural due process claim because her indicated report would "automatically be disclosed to potential employers." *Valmonte*, 18 F.3d at 997, 1000; *see also McCaul v. Ardsley Union Free Sch. Dist.*, 514 F. App'x 1, 4-5 (2d Cir. 2013) (summary order) (affirming that subject of SCR Report failed to state a stigma plus claim where, *inter alia*, she made "no allegation that [OCFS] ever disclosed to anyone the fact that she was listed on the SCR"). Here, there is no allegation (because there cannot be) that OCFS has disclosed Plaintiffs' indicated reports to anyone. *See Grullon v. ACS*, 2021 WL 981848, at *9 (S.D.N.Y. Mar. 16, 2021) (dismissing procedural due process claim where plaintiff did not allege that the "SCR ever disclosed to anyone the fact that he was listed on the SCR or that [the] SCR failed to offer him an administrative hearing to challenge the purported finding of indicated." (cleaned up)).

[21] While the fact that Plaintiffs are not named by OCFS necessitates the dismissal of all Plaintiffs, this is particularly true of Roe and Voe. Neither are alleged to have been subject to an SCR database check. *See* Compl. ¶¶ 66, 72. Per their allegations, no employer has ever even asked if Roe and Voe are on the SCR. *See id.* If no employer has ever asked about Roe and Voe's presence on the SCR, and OCFS has never told anyone that they are on the SCR, there cannot have been any defamation.

19

personnel file was insufficiently public to create a stigma); *Ingber v. N.Y. City Dep't of Educ.*, 2014 WL 6888777, at \*3 (S.D.N.Y. Dec. 8, 2014) (no due process violation where allegedly false statements were made in internal files).

Additionally, the Complaint fails because Plaintiffs do not contend that the allegations against them are false. While Plaintiffs appear to dispute whether their actions constituted child abuse or maltreatment worthy of status as an indicated report, they do not allege that the underlying factual allegations are false. *See* Compl. ¶¶ 53-73. In other words, it is CPS's determination that a fair preponderance of the evidence indicates that Plaintiffs' actions constitute child abuse or maltreatment—not the underlying factual allegations—with which Plaintiffs take issue. Having failed to articulate a public, false, and therefore stigmatizing statement by OCFS, Plaintiffs' claims should be dismissed. *See Codd v. Velger*, 429 U.S. 624, 627 (1977) (requiring stigma plus plaintiff to allege statement is "substantially false"); *Patterson v. City of Utica*, 370 F.3d 322, 330 (2d Cir. 2004) (same); *Huda v. N.Y. City Health & Hosps. Corp.*, 2021 WL 1163975, at \*4 (S.D.N.Y. Mar. 26, 2021) (dismissing stigma plus claim where there was no public dissemination); *see also Barzilay v. City of N.Y.*, 610 F. Supp. 3d 544, 613 (S.D.N.Y. 2022) (dismissing stigma plus claim reasoning that list of employees who had violated law "could not reasonably be interpreted to so denigrate an individual's reputation that it would function to serve as a significant hinderance to practicing her profession").

### 2.  Plaintiffs Fail to Allege a Tangible Burden

Even if Plaintiffs had alleged defamation (they have not), their claim would still fail because they cannot establish the "plus," i.e., a "tangible burden" on their employment prospects. *McCaul*, 514 F. App'x at 4. *see also Paul*, 424 U.S. at 712. Plaintiffs must identify a separate, State-imposed burden or "alteration of status" to establish the second prong of a stigma plus

20

claim.[22] *See Sadallah v. City of Utica*, 383 F.3d 34, 38 (2d Cir. 2004).

Here, Plaintiffs' attempts to articulate a tangible burden fail.[23] Under current law, if the subject of an indicated report seeks an Administrative Appeal, potential employers would not know of the existence of the indicated report. Further, the indicated report does not prevent Plaintiffs from working in childcare, they just may not work *unsupervised* with vulnerable populations. SSL § 424-a(1)(b)(i)(A). Thus, Plaintiffs can only prevail if working unsupervised in a childcare setting is a protected liberty interest.

The *Barzilay* decision is instructive. In *Barzilay,* the court concluded that plaintiff EMTs failed to allege a tangible burden on their employment prospects after they were placed on a restricted list and could not respond to 911 calls but could do other work, including for hospitals and ambulatory providers outside the 911 system. *Id.* at 616. The court reasoned:

> In arguing that they were deprived of a liberty interest in pursuing their profession . . . Plaintiffs would define their profession too narrowly; such a definition could create a liberty interest whenever an individual is unable to practice one aspect of their profession. Courts have not embraced such an approach . . . . If the lawyer were able to create a liberty interest simply by defining her occupation as a "Traffic and Violations Bureau lawyer," or the schoolteacher by calling himself a "New York City public-school teacher," litigants would be able to circumvent the requirement that there be a "complete prohibition" on participating in a profession by coming up with increasingly creative titles for their work.

*Id.* at 615. Here, Plaintiffs are akin to the attorneys excluded from practicing in certain courts or a teacher who can only teach in certain schools. They can still be hired and begin working in

---

[22] Any argument that OCFS's silence is enough to constitute a "tangible burden" should be rejected. "[T]he Supreme Court, the Second Circuit, and the other Circuits addressing the issue have all indicated that the right of occupational choice is afforded Due Process protection only when a plaintiff is 'completely prohibited' from engaging in his or her chosen profession." *Capogrosso v. Gelbstein*, 2019 WL 4686448, at *12 (E.D.N.Y. Sept. 25, 2019) (cleaned up) (dismissing procedural due process claim because "[t]he Due Process Clause does not stretch so far as to secure the right to specific jobs"); *see also Harris v. Queens Cnty. Dist. Atty's Off.,* 2012 WL 6630034, at *7 (E.D.N.Y. Sept. 15, 2012) ("It is well settled that one must have no ability to practice one's profession at all in order to state a claim for deprivation of a liberty interest.")

[23] This is particularly so as to Roe and Voe, who are not seeking employment. Compl. ¶¶ 66, 72.

21

childcare; they just may not be unsupervised with children. SSL § 424-a(1)(b)(i)(A).[24] Thus, Plaintiffs do not allege that they are deprived of a protected liberty interest.

### B. Plaintiffs Cannot Establish That They Were Deprived of Due Process

Even assuming *arguendo* that Plaintiffs have a protected liberty interest at issue (which they do not, *see* Point III(A), *supra*), the Complaint should still be dismissed because Plaintiffs received all the necessary process. "[I]n order to bring a successful stigma-plus claim, the plaintiff also must demonstrate that her liberty was deprived without due process of law." *Segal v. City of N.Y.*, 459 F.3d 207, 213 (2d Cir. 2006). "Stated differently, the availability of adequate process defeats a stigma-plus claim." *Id.* (citations omitted). To determine what due process requires in a particular context, courts consider:

> three distinct factors: First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Eldridge*, 424 U.S. at 335 (citing *Goldberg v. Kelley*, 397 U.S. 254 at 263-71 (1970)).

As to the interests at stake, there can be no real dispute that New York's interest at stake here is a significant one. There are few more important government interests than the prevention of child abuse and maltreatment. *See Santosky v. Kramer,* 455 U.S. 745, 766 (1982) (noting the State's interest in protection of children). The SCR was originally instituted in response to the deaths of children due to child abuse and neglect. *See* Ch. 1039, 180th Gen. Assemb., Reg. Sess.

---

[24] The restrictions on employment under prior law were far more severe. As articulated in *Valmonte,* the law then in effect mandated "disclosure of [the plaintiff's] status on the list" to potential employers *before* CPS had to prove the allegations. *See id.* at 1000, 1003-04. Now, employers are not informed of someone's indicated report until after their Administrative Appeal is complete, applying a "fair preponderance of the evidence" standard at every step, and only then if the indicated report is retained as both indicated and R&R. This is a stark difference to the harm in *Valmonte*. *See id.* at 1003 (finding due process violation based on use of "some credible evidence" standard in order to initially include a subject on the SCR).

22

(N.Y. 1973) at 9. The countervailing private interest is Plaintiffs' purported interest in employment with vulnerable populations—but, as detailed below—that interest is not impacted until the Administrative Appeal is complete (and only if the report is upheld as indicated and found to be R&R). During the pendency of their Administrative Appeal, Plaintiffs' indicated reports are not disclosed to employers, and they can still be hired and begin working.

The Administrative Appeal ensures that any risk of erroneous deprivation is low and balances the State's interest in child safety with Plaintiffs' purported interest in working with vulnerable populations. The subjects of indicated reports are entitled to several levels of pre-deprivation process, during which they have multiple opportunities to be heard, thus mitigating any real risk of erroneous deprivation. *See Radolf v. Univ. of Conn.*, 364 F. Supp. 2d 204, 213 (D. Conn. 2005) (availability of pre- and post-deprivation process satisfied due process).

*First*, the subjects of indicated reports can avail themselves of the entire Administrative Appeal process, starting with the Administrative Review. The Administrative Review contains all the hallmarks of due process, and Plaintiffs received that process swiftly. *See* Compl. ¶¶ 36, 58, 65,[25] 71; *see Loudermill,* 470 U.S. at 545–46 (pre-deprivation process satisfied by notice and opportunity to be heard); *Calzerano v. Bd. of Trs. of Police Pension Fund*, 877 F. Supp. 161, 164 (S.D.N.Y. 1995) (due process satisfied where plaintiff could submit argument in writing). During the Administrative Review, Plaintiffs have the opportunity to be heard: they can submit written evidence, seek legal representation, and contest CPS's allegations. *See* SSL §§ 422(8)(a)(ii), 424-a(1)(e)(ii); 18 N.Y.C.R.R. §§ 434.1-11. There is an objective fact finder (OCFS), before whom

---

[25] Roe does not allege having received Administrative Review but would have had one before her Administrative Hearing being scheduled. *See* Compl. ¶¶ 60-66. Roe's failure to allege when she requested Administrative Review or the timing of it is fatal to her procedural due process claim. *See id.*; *Martin v. MTA Bridges & Tunnels*, 2008 WL 2796640, at *4 (S.D.N.Y. July 17, 2008) ("absence" of allegations resulted in "not enough facts hav[ing] been alleged in the . . . pleading to make [a] claim 'plausible on its face.'")

Plaintiffs and the local CPS agency may submit competing evidence. *See id.* Perhaps most importantly, Plaintiffs can *still* be hired for childcare and begin working and OCFS will disclose nothing to employers—making it a textbook pre-deprivation review. *See* SSL § 424-a(1)(b)(i)(A); *see also Loudermill,* 470 U.S. at 545–46 (pre-termination hearing "need not be elaborate" so long as it provides "[t]he essential requirements of due process," which are "notice and an opportunity to respond").

If following the Administrative Review, OCFS determines that the allegations of child abuse or maltreatment are supported by a fair preponderance of the evidence and that the report is R&R, then OCFS notifies *only* the subject of the report of the determination. *Id*. § 422(8)(a)(v). Employers still will not be told. *Id.*

*Second*, following the Administrative Review, the subjects of indicated reports have a further pre-deprivation review, the Administrative Hearing, at which they can have legal representation, present evidence, proffer and cross-examine witnesses before an ALJ, and at which CPS must prove its case by a fair preponderance of the evidence. *See* SSL §§ 422(8)(a)(ii), 424-a(1)(e)(ii); 18 N.Y.C.R.R. §§ 434.1-11. It is only after the Administrative Hearing is complete—and the report has been upheld as indicated and R&R—that the SCR may disclose that the individual is the subject of an indicated report in response to inquiries under § 424-a of the SSL. SSL §§ 422(8)(a)(iv); 424-a(1)(e).

*Finally*, if the subject of an indicated report is dissatisfied with the hearing, they may commence a CPLR article 78 proceeding challenging the decision, which federal courts have found "constitutes a wholly adequate post-deprivation hearing for due process purposes." *Locurto v. Safir*, 264 F.3d 154, 175 (2d Cir. 2001); *accord Flynn v. Bloomingdale*, 2023 WL 4832223, at *3 (2d Cir. July 28, 2023) ("the availability of an article 78 proceeding would satisfy procedural due process").

The statutory framework around indicated reports thus includes notice as well as the opportunity to be heard, to respond orally and in writing, to submit evidence, and to be represented by counsel. Thus, the Administrative Appeal satisfies any process due to Plaintiffs. *See Loudermill,* 470 U.S. at 545-47. Moreover, the risk of erroneous deprivation is low as Plaintiffs have not been deprived of any liberty interest and will not be until their Administrative Appeal is complete (and only if the report is upheld as indicated and found to be R&R). *See id.* at 545-547. Plaintiffs' procedural due process claims should be dismissed.

## **CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court dismiss the Complaint, with prejudice, together with such other relief as the Court may award.

Dated: New York, New York
June 2, 2026

Respectfully submitted,
LETITIA JAMES
Attorney General
State of New York
*Attorney for Defendants*

By:
 _/s/  Elizabeth B. Gates_____
Elizabeth Gates
Special Litigation Counsel
Ihaab Syed
Assistant Attorney General
28 Liberty Street
New York, New York 10005
(212) 416-6402/8210
elizabeth.gates@ag.ny.gov
ihaab.syed@ag.ny.gov

25

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 7.1(c)**

In accordance with Rule 7.1(c) of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York and Your Honor's Individual Practices Rule IV.B, I hereby certify that this memorandum of law is limited to 8,710 words, exclusive of the caption, table of contents, table of authorities, and signature block.

_/S/ Elizabeth B. Gates_
Elizabeth B. Gates
Special Litigation Counsel
